UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

SAMIE ABBAS,

                       Plaintiff,         20-cv-3636 (JGK)

      - against -                 <u>MEMORANDUM OPINION</u>
                                                <u>AND ORDER</u>

CORRECTIONS OFFICER TATE,

                       Defendant.
─────────────────────────────────────────

JOHN G. KOELTL, District Judge:

    The plaintiff, Samie Abbas, brought this <u>pro se</u> action against the defendant, Correction Officer Tate ("Officer Tate"), pursuant to 42 U.S.C. § 1983. ECF No. 1 ("Compl."). After the defendant filed an answer to the complaint, ECF No. 18, the defendant moved to dismiss the complaint on April 30, 2021 for failure to exhaust administrative remedies and for failure to state a claim, ECF No. 28. The plaintiff failed to respond to this motion, despite being granted an extension of time to respond by this Court. <u>See</u> ECF No. 34. Therefore, as the Court explained in its January 7, 2021 Order, the motion will be decided on the papers. ECF No. 35. For the reasons explained below, the defendant's motion to dismiss is construed as a motion for judgment on the pleadings and is **denied**.

I.

    The following facts are taken from the plaintiff's complaint and are accepted as true for the purposes of this motion.

1

On June 20, 2017, Mr. Abbas was incarcerated at Rikers Island. Compl. 4. At around 8:00 p.m., he was in the main gym area for a basketball tournament when he saw an inmate (the "unnamed inmate") with whom Mr. Abbas "had issues." Id.[1] Mr. Abbas began punching the unnamed inmate and continued to "assault" that inmate even though the unnamed inmate did not "assault [Mr. Abbas] back in any way." Id.

Soon, an unnamed corrections officer (the "unnamed officer") entered the gym and gave Mr. Abbas a "direct order to stop or else chemical agents [would] be utilized" against him. Id. Mr. Abbas complied with the unnamed officer's order and sat on the bench where the "rest of the inmates were put." Id. at 5.

Captain Coperon soon responded to the incident. Id. After asking what had happened, and who had been involved, the unnamed officer told Captain Coperon that Mr. Abbas had assaulted the unnamed inmate. Id.

Officer Tate, who at some point had entered the gym, called Mr. Abbas to get off the benches and told Mr. Abbas to put his hands on the wall. Id. Mr. Abbas complied, and Officer Tate put Mr. Abbas' hands in "mechanical restraints with plexi cuffs." Id. Officer Tate then told Mr. Abbas to "step to the wall," which Mr. Abbas did. Id. Mr. Abbas felt his head being

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

"forcefully slammed into the wall twice," and he "instantly buckled down to one knee with blurry vision." Id. A few seconds later, Mr. Abbas was "forcefully yanked" back to his feet by his wrists. Id.

While "blood was pouring down [his] face," Mr. Abbas asked Officer Tate "why [he] did that just now," saying that he "ain't even do nothing." Id. Officer Tate responded, "[Y]ou like violating my tour," which the plaintiff alleges means making Officer Tate "do paper work before his shift is over." Id. Mr. Abbas claims that, throughout his interaction with Officer Tate, Mr. Abbas never resisted. Id.

Thereafter, Mr. Abbas was taken to the clinic in the jail, and then brought to an outside hospital for medical treatment. Id. A few days later, investigators came to see Mr. Abbas; they took pictures of him and took his statement about what had allegedly transpired between him and Officer Tate. Id.

On April 24, 2020, the plaintiff filed this complaint, alleging that Officer Tate used excessive force against him, resulting in permanent disfigurement to his eyebrow and mental suffering.[2] Id. at 6-7. In his complaint, the plaintiff admits

---

[2] The plaintiff brought three claims against the defendant: (1) excessive force, (2) "undetermined time," and (3) violation of his Equal Protection rights. Compl. 6-7. The Court construes these claims liberally to plead one cause of action for excessive force in violation of the plaintiff's Fourteenth Amendment Due Process rights, resulting in both physical injury and mental suffering. There is no Equal Protection claim based on the facts alleged: the plaintiff does not allege that he was "treated

3

that there is a prisoner grievance procedure at his facility, and that he failed to present the facts relating to his complaint in this program. Id. at 2. He explains that he "did not know at the time about the grievance program" because this was his first time at Rikers Island and he "didn't know how to file a complaint." Id. at 3. He does, however, state that he complained to Captain Coperon and the investigator about the incident. Id. He also notes that, while he is not "100% positive," he "heard that Officer Tate was suspended" as a result of their altercation. Id.

On November 25, 2020, Officer Tate answered the complaint, denying the truth of the events alleged by the plaintiff, ECF No. 18, and on April 30, 2021, Officer Tate moved to dismiss the complaint, ECF No. 30.

## II.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) that is styled as arising under Rule 12(b) but is filed after the close of pleadings should be construed as a motion for judgment on the pleadings under Rule 12(c). Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

---

differently from other similarly situated individuals" or that he was discriminated against based on his "membership in a vulnerable class," Lanning v. City of Glens Falls, 908 F.3d 19, 29 (2d Cir. 2018), but argues that the state officials at issue failed to protect him personally, see Compl. 6-7. This claim is more appropriately reviewed under the Due Process Clause.

4

Accordingly, the Court construes the defendant's motion to dismiss as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

The standards to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are "identical" to those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. In both postures, the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor," and in both postures, the Court should "not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." Id. Although the plaintiff has not opposed the defendant's motion, this does not justify the dismissal of the complaint, because a plaintiff is not obligated to respond to a motion for judgment on the pleadings and may rely on the sufficiency of his pleadings. Maggette v. Dalsheim, 709 F.2d 800, 802-03 (2d Cir. 1983).

Because the plaintiff proceeds pro se, the Court construes his pleadings liberally and interprets them so as to raise the strongest arguments they suggest. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). However, although the Court "must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare

5

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III.

The defendant moves to dismiss the plaintiff's complaint on two grounds: first, the defendant argues that the plaintiff failed to exhaust his administrative remedies, and second, the defendant argues that the plaintiff failed to plead facts supporting a claim for excessive force. Neither ground is persuasive at this stage.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The New York State Corrections and Community Supervision's Inmate Grievance Program ("IGP") provides a three-step grievance process: "(1) grievances are sent to the inmate grievance resolution committee ("IGRC"); (2) on appeal, the inmate may take his complaint to the facility superintendent; and (3) if still not satisfied, an inmate may appeal to a committee of central office staff acting on behalf of the commissioner." Romano v. Ulrich, 773 F. App'x 654, 656 (2d Cir. 2019) (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1(c)). "Only after

completing all three steps of the IGP in a timely manner may an inmate initiate suit, provided no exception to exhaustion applies." Gunn v. Ayala, No. 20-cv-840, 2021 WL 5647795, at *6 (S.D.N.Y. Dec. 1, 2021).

The PLRA contains a "'textual exception,' in that it only requires an inmate to exhaust 'available' remedies." Romano, 773 F. App'x at 655. "[A]n administrative remedy may be deemed 'unavailable' when (1) it operates as a simple dead end; (2) it is so opaque that it becomes, practically speaking, incapable of use; and (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. The court of appeals has stated that these three circumstances "do not appear to be exhaustive." Id.

In this case, the plaintiff's failure to file a grievance with the IGRC is insufficient to require the dismissal of his complaint at this stage. "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). While a district court may dismiss a complaint for failure to exhaust "if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement," id., it is not sufficiently clear here that the

7

plaintiff did not have an excuse for his failure to exhaust, and dismissal is therefore inappropriate, see Gunn, 2021 WL 5647795, at *7 (collecting cases in which courts have denied motions to dismiss for failure to exhaust "even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure"). The question of whether the plaintiff's complaint should be dismissed for failure to exhaust is "more properly reserved for a motion for summary judgment, when a more fulsome record can shed light on whether . . . any non-exhaustion is excused." Id. This approach is particularly appropriate here in light of the plaintiff's pro se status. See Wing v. Myers, No. 18-cv-11056, 2019 WL 6732967, at *6 (S.D.N.Y. Dec. 11, 2019).

The defendant's motion to dismiss for failure to exhaust is accordingly **denied**.

**B.**

Section 1983 establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). To maintain a § 1983 action, "two essential elements

must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Davis v. Murphy, No. 12-cv-3297, 2018 WL 10070524, at *5 (S.D.N.Y. Sept. 24, 2018) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

Because the plaintiff was a state pretrial detainee at the time of this incident, his claims of excessive force are analyzed under the Due Process Clause of the Fourteenth Amendment. Darnell v. Pineiro, 849 F.3d 17, 21 n.3 (2d Cir. 2017). To establish a violation of the right to be free from excessive force, a pretrial detainee must show that the defendant purposely or knowingly used force against the detainee that was "objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). Whether an action is objectively reasonable "turns on the facts and circumstances of each particular case," and considerations such as "the relationship between the need for the use of force and the amount of force used[,] the extent of the plaintiff's injury[,] any effort made by the officer to temper or to limit the amount of force[,] the severity of the security problem at issue[,] the threat reasonably perceived by the officer[,] and whether the plaintiff was actively resisting," may bear on this determination. Id. at

9

397. This analysis is meant to reflect the reality that running a prison "is an inordinately difficult undertaking." See Ross v. Willis, No. 16-cv-6704, 2021 WL 3500163, at *9 (S.D.N.Y. Aug. 9, 2021).

In this case, the plaintiff's allegations suffice to state a claim for a violation of his constitutional rights under § 1983. The defendant does not dispute that he was acting under color of state law at the time of the incident, and accepting the facts pleaded in the complaint as true, the plaintiff has adequately demonstrated that Officer Tate purposely or knowingly used objectively unreasonable force against the plaintiff when Officer Tate slammed the plaintiff's head against the wall, twice. See, e.g., Celestin v. Angeletta, No. 19-cv-1887, 2021 WL 1062344, at *4 (S.D.N.Y. Mar. 19, 2021) (finding excessive force where correction officers punched and elbowed a pretrial detainee when he was restrained); Jumpp v. Simonow, No. 3:20-cv-138, 2020 WL 4059850, at *13 (D. Conn. July 20, 2020) (finding excessive force where a correction officer slammed a pretrial detainee's arm without justification); Gilliam v. Black, No. 3:18-cv-1740, 2019 WL 3716545, at *9 (D. Conn. Aug. 7, 2019) (finding excessive force where an officer repeatedly banged the plaintiff's head into a wall and on a metal bench when the plaintiff was complying with the officers' directives).

10

The defendant's arguments to the contrary are unpersuasive. First, the defendant argues that the plaintiff's excessive force claim should fail because he admits to having assaulted the unnamed inmate. But the plaintiff's assault of the unnamed inmate did not give Officer Tate a blanket license to use excessive force against the plaintiff in return. While prison officials must be afforded "latitude to make good-faith efforts to maintain or restore discipline," Ross, 2021 WL 3500163, at *9, crediting the plaintiff's allegations, there was no need for any such efforts. The plaintiff states that he complied with the unnamed officer's directive to stop hurting the unnamed inmate, and that by the time that Officer Tate began interacting with the plaintiff, the plaintiff was sitting on the bench, not hurting anyone. Further, when the defendant allegedly slammed the plaintiff's head into the wall, the plaintiff's two hands were restrained, and he was complying with all of Officer Tate's directives.

Nor is the defendant's argument that the plaintiff did not clearly articulate that the defendant used any force against the plaintiff, or otherwise caused the plaintiff to fall, persuasive. Construing the facts in the plaintiff's favor, Officer Tate's use of force against the plaintiff is sufficiently pleaded. The plaintiff states that Officer Tate put the plaintiff's hands on the wall, and put him in mechanical

restraints. The plaintiff then states that he felt his head being slammed into the wall, and that he asked Officer Tate why he did that to him. While the plaintiff does not explicitly state that Officer Tate slammed his head into the wall, the gist of the plaintiff's complaint is plain: Officer Tate allegedly slammed the plaintiff's head into the wall, resulting in the plaintiff's permanent physical injury and mental suffering. The plaintiff's complaint suffices to state a claim to relief under § 1983 that is plausible on its face.

Taking the facts pleaded in the plaintiff's complaint as true, the plaintiff has adequately demonstrated that Officer Tate's knowing or purposeful actions were objectively unreasonable under the circumstances and violated the plaintiff's constitutional rights. The defendant's motion to dismiss for failure to plead facts supporting a claim for excessive force against the plaintiff is accordingly **denied**.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendant's motion for judgment on the pleadings is **denied**. The Clerk of Court is directed to close Docket No. 28. The Clerk is directed to mail a

copy of this Memorandum Opinion and Order to the plaintiff's last known address and to note service on the docket sheet.

**SO ORDERED.**

Dated:   New York, New York
        **February 4, 2022**

                                      John G. Koeltl
                              **United States District Judge**